UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ABOVEGEM, INC.,

    Plaintiff,

v.

ORGANO GOLD MANAGEMENT, LIMITED, et al.,

    Defendants.

Case No. 19-cv-04789-PJH

**ORDER GRANTING MOTIONS TO DISMISS**

Re: Dkt. Nos. 40, 42

Defendant Organo Gold International, Inc.'s ("OG International") motion to dismiss came on for hearing before this court on March 11, 2020. Defendants Organo Gold Management ("OG Management"), Organo Gold Holdings ("OG Holdings"), and Paul Caldwell's motion to dismiss also came on for hearing before this court on March 11, 2020. Plaintiff AboveGEM, Inc. ("AboveGEM") appeared through its counsel, Gautam Dutta. Defendant OG International appeared through its counsel, Lawrence Steinberg, and OG Management, OG Holdings, and Caldwell appeared through their counsel, Jason Skaggs. Having read the papers filed by the parties and carefully considered their arguments and relevant authority, and good cause appearing, the court hereby GRANTS defendants' motions for the following reasons.

**BACKGROUND**

On August 14, 2019, plaintiff filed its original complaint against defendants OG International, OG Management, and OG Holdings. Dkt. 1. Plaintiff also filed a motion for temporary restraining order the same day. Dkt. 2. The court heard arguments concerning the motion on August 16, 2019 and issued an order denying the motion on

the same day. Dkt. 20. Then, on November 5, 2019, plaintiffs filed the operative First Amended Complaint ("FAC") and adding defendant Paul Caldwell. Dkt. 25. Plaintiff brings six claims: (1) Breach of Contract; (2) Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.; (3) Constructive Trust; (4) Conversion; (5) Violation of 18 U.S.C. § 1962(c) (RICO) against OG Management and Paul Caldwell; and (6) Violation of 18 U.S.C. § 1962(c) (RICO Conspiracy) against OG Management and Paul Caldwell. Defendant OG International moves to dismiss the First through Fourth claims pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Defendants OG Management, OG Holdings (together with OG Management, the "Hong Kong defendants"), and Paul Caldwell have filed a separate motion to dismiss all claims pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).

Plaintiff AboveGEM, Inc., a California corporation headquartered in Santa Clara, California, is a software solution provider. FAC ¶ 2. Defendant OG International is a Nevada corporation. OG Management and OG Holdings are Hong Kong corporations and Paul Caldwell is a Texas resident. Among other things, AboveGEM's software and web-based services enable web-based businesses to track and manage their orders, sales, and customer information. Id. Between March 2012 and November 2018, AboveGEM provided software services to defendants OG Management, OG International, and other related entities. Id. ¶ 3. By November 2018, OG Management had a past due balance with plaintiff in the amount of approximately $450,000. Id. ¶ 18. On or about November 19, 2018, plaintiff entered into a settlement agreement with OG Management to repay the amount owed; that settlement agreement was guaranteed by OG Holdings. Id. ¶¶ 19–20.

The agreement required defendant OG Management to remit an initial payment of $50,000 within 48 hours and then pay a monthly amount over the course of ten months. Id. ¶ 21. OG Management paid the initial $50,000 and then paid the first monthly installment of $40,000 on December 6, 2018. Id. ¶ 23. Notably, despite not being a signatory to the settlement agreement, OG International paid the next monthly payment

to plaintiff on January 6, 2019. Id. After this January 2019 payment, plaintiff alleges that neither OG Management nor OG Holdings (its guarantor) made any further payments. Id. ¶ 25. Plaintiff's co-founder, Oliver Wang, sent emails and text messages to individuals he knew at both OG Management and OG International demanding payment. Id. ¶¶ 28–30. In April 2019, plaintiff's counsel sent a demand letter to OG Holdings requesting payment for OG Management. Id. ¶ 32. There have been no further payments from any OG entity to plaintiff.

Because defendants have filed motions to dismiss for lack of personal jurisdiction, the parties have submitted declarations elucidating additional factual details. OG International is a Nevada corporation with its principal place of business in Ferndale, Washington. Dkt. 40-1 (the "Miranda Decl."), ¶ 3. Patrick Miranda, OG International's general counsel, states that "there are no shareholders, employees, officers, or directors of OG International which have any affiliation with either of the Hong Kong Defendants." Id. ¶ 6. The only affiliation between OG International and the Hong Kong defendants is that they are parties to a global licensing agreement that gives OG International the right to use the "Organo Gold" brand and intellectual property and to market "Organo Gold" labeled products in the United States. Id.

Miranda further states that he is "not an officer, employee, or agent of either of the Hong Kong Defendants". Miranda Decl. ¶ 5. Plaintiff disputes Miranda's role. According to Oliver Wang (plaintiff's co-founder), Miranda was "Legal Counsel" to the entire Organo Gold group of companies. Dkt. 52-1 (the "Wang Decl."), ¶ 16. As evidence of this fact, Wang states that "Mr. Miranda sent his Nov. 18, 2016 Miranda Email to me on behalf of OG International, OG Holdings, and OG Management." Id. ¶ 17. That email is attached as an exhibit and Miranda's signature block states "Organo Gold Enterprises, Inc." Id., Ex. 2.

The parties have had a business relationship since at least 2012. On or about January 1, 2012, OG International entered into a services subscription agreement ("SSA") with an entity named 2ViVE LLC, which plaintiffs states was AboveGEM's

corporate predecessor. Wang Decl. ¶ 8. OG International then assigned the agreement to OG Holdings on or about July 1, 2012. Id. ¶ 10. OG Holdings then assigned the agreement to OG Management on or about November 1, 2013. Id. During the term of the SSA, the OG entities (including OG International) had some common control through OG International's President and CEO Bernardo Chua. Miranda Decl., Ex. A; Wang Decl. ¶ 19. This control extended to both OG Holdings and OG Management because he served as a director for both those entities as late as July 2018. Dkt. 52-2 (the "Dutta Decl."), Ex. A. However, effective on or about September 7, 2018, Chua transferred his interests in both OG Holdings and OG Management to defendant Paul Caldwell. Id., Ex. B. It appears that Chua remains the President and CEO of OG International but no longer has an interest in the Hong Kong defendants.

Chua's transfer of interests was triggered by the sale of the Hong Kong defendants to Paul Caldwell, which resulted in Caldwell gaining control of OG Holdings and OG Management. Miranda Decl. ¶ 8; Dutta Decl., Ex. B. Caldwell states that OG Management is a wholly owned subsidiary of OG Holdings. Dkt. 42-1 (the "Caldwell Decl."), ¶ 2. Paul Caldwell is the Chairman and CEO of OG Holdings and is on the Board of Directors of its subsidiary, OG Management. Id. Caldwell states that he has no interest or position in OG International and has no control over OG International. Id. Miranda also states that there is no common ownership or control between OG International and the Hong Kong defendants. Miranda Decl. ¶ 4. According to OG Holdings' annual return, an entity named ADAC Holdings IV Corporation owns the entirety of OG Holdings. Wang Decl. ¶ 49. In turn, ADAC's CEO and director is Caldwell, and there is one other director (Kenneth Finn). Id. ¶ 50.

As previously noted, plaintiff and defendants OG Holdings and OG Management entered into a settlement agreement in November 2018. Also in November 2018, the Hong Kong defendants decided to discontinue their use of AboveGEM as their software and service provider. Miranda Decl. ¶ 12. Caldwell states that, to his knowledge, neither he nor anyone associated with the Hong Kong defendants were located in California

during the contract negotiations with plaintiff. Caldwell Decl. ¶ 4. Caldwell signed the settlement agreement with plaintiff on behalf of OG Holdings. Id. Awie Kardiman, OG Management's acting CFO, signed on behalf of OG Management. Id.

Prior to the settlement agreement, OG International made three payments in July, September, and November 2018 as partial payments under the SSA. Wang Decl. ¶ 27. In January 2019, OG International, despite not being a party to the settlement agreement, sent a $40,000 payment to plaintiff at the request of OG Management. According to Miranda, OG International owed money to OG Management and, in order to avoid certain tax withholdings, OG International transferred $40,000 directly to plaintiff, rather than through an overseas transaction to OG Management (and then to plaintiff). Miranda Decl. ¶ 13.

**DISCUSSION**

**A.     Legal Standard**

The party seeking to invoke a federal court's jurisdiction bears the burden of demonstrating jurisdiction. Picot v. Weston, 780 F.3d 1206, 1211 (9th Cir. 2015). A federal court may dismiss an action under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. When resolving a motion to dismiss under Rule 12(b)(2) on written materials, the court accepts uncontroverted facts in the complaint as true and resolves conflicts in affidavits in the plaintiff's favor. Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011). "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." Daimler AG v. Bauman, 571 U.S. 117, 125 (2014); see Fed. R. Civ. Proc. 4(k)(1)(a). California's long arm statute permits exercise of personal jurisdiction to the fullest extent permissible under the U.S. Constitution, therefore, the court's inquiry "centers on whether exercising jurisdiction comports with due process." Picot, 780 F.3d at 1211; see Cal. Code Civ. Proc. § 410.10.

The Due Process Clause of the Fourteenth Amendment "limits the power of a state's courts to exercise jurisdiction over defendants who do not consent to jurisdiction." Martinez v. Aero Caribbean, 764 F.3d 1062, 1066 (9th Cir. 2014). Due process requires

that the defendant "have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Under the "minimum contacts" analysis, a court can exercise either "general or all-purpose jurisdiction," or "specific or conduct-linked jurisdiction." Daimler, 571 U.S. at 121–22 (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)).

Under general jurisdiction, a nonresident defendant may be subject to suit even on matters unrelated to his contacts with the forum. Id. at 126–33. To establish general jurisdiction, plaintiffs must demonstrate that the defendant has continuous and systematic contacts sufficient to approximate physical presence in the state. In re W. States Wholesale Natural Gas Antitrust Litig., 715 F.3d 716, 741 (9th Cir. 2013). Where the defendant is a foreign corporation, the plaintiff must establish that the defendant has "affiliations so continuous and systematic as to render [it] essentially at home in the forum State, . . . i.e., comparable to a domestic enterprise in that State." Daimler, 571 U.S. at 133 n.11 (citation omitted). The paradigm fora for the exercise of general jurisdiction over a corporation are the place of incorporation and the principal place of business, and only in an "exceptional case" will general jurisdiction be available elsewhere. Id. at 137–38 & n.19.

In the absence of general jurisdiction, a court may exercise specific jurisdiction over a defendant if its less-substantial contacts with the forum give rise to the claim or claims pending before the court—that is, if the cause of action "arises out of" or has a substantial connection with that activity. Hanson v. Denckla, 357 U.S. 235, 250–53 (1958); see also Goodyear, 564 U.S. at 924–25. The inquiry into whether a forum state may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation. Walden v. Fiore, 571 U.S. 277, 283–84 (2014) (citation omitted).

To determine whether a defendant's contacts with the forum state are sufficient to establish specific jurisdiction, the Ninth Circuit employs a three-part test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Morrill v. Scott Financial Corp., 873 F.3d 1136, 1142 (9th Cir. 2017). Plaintiffs bear the burden of satisfying the first two prongs. Id. If plaintiffs do so, then the burden shifts to defendant to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable." CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1076 (9th Cir. 2011) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477–78 (1985)).

**B.  Analysis**

### 1. Plaintiff's Evidentiary Objection

Plaintiff objects to the Supplemental Miranda Declaration, offered with defendant OG International's reply brief. Dkt. 56. Civil Local Rule 7-3(c) permits affidavits or declarations to be submitted with any reply brief. However, Civil Local Rule 7-4(d)(1) permits a party to object to "new evidence" submitted in the reply brief. The Supplemental Miranda Declaration contains new evidence including facts about counsel for the Hong Kong defendants, Organo Gold Enterprises, and three payments made by OG International to plaintiff. Dkt. 54-1 ¶¶ 4–7. Because this declaration contains new information, the court STRIKES the Supplemental Miranda Declaration.

Plaintiff also contends that OG International should not be allowed to rely on facts submitted by the other defendants in the declarations submitted by those parties. Plaintiff cites only one case, which dealt with adopting by reference a part of another party's brief under the Federal Rules of Appellate Procedure. United States v. Ramirez-Rivera, 800 F.3d 1, 11 n.1 (1st Cir. 2015), overruled on different grounds recognized by United States v. Leoner-Aguirre, 989 F.3d 310 (1st Cir. 2019). The Federal Rules of Appellate Procedure are not applicable here and the court declines to extend any similar reasoning to assessing personal jurisdiction. Plaintiff decided to sue all OG entities and the facts of

7

this case are applicable to the entirety of this case  Accordingly, the court will consider declarations from both motions when considering personal jurisdiction.

Finally, in its opposition brief, plaintiff raises a hearsay objection to a statement in the Miranda Declaration, specifically:  "It was explained that if OG [International] paid money that it owed to OG Management to AboveGEM, the parties could avoid tax withholding."  Opp. at 9 n.19; Miranda Decl. ¶ 13.  A Rule 12(b)(2) motion permits the parties to submit affidavits and "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists."  Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588–89 (9th Cir. 1996) (quoting WNS, Inc. v. Farrow, 884 F.2d 200, 203 (5th Cir. 1989)).  Although plaintiff objects to the Miranda Declaration as hearsay evidence, it has not controverted the facts asserted in that statement.  See Campbell Pet Co. v. Miale, 542 F.3d 879, 888-89 (Fed. Cir. 2008) ("[T]he defendants argue that the portions of the affidavits on which Campbell relies are inadmissible hearsay.  We need not address . . . hearsay objection at this stage, however, because this appeal merely requires that we address whether the uncontroverted facts alleged by Campbell in its affidavits and complaint support a prima facie showing that the district court had personal jurisdiction over the defendants. . . . Although the defendants objected to Campbell's hearsay evidence, they did not controvert the truth of those assertions.").  The court overrules plaintiff's hearsay objection.

**2.      Personal Jurisdiction**

**a.      General Jurisdiction**

The paradigm fora for the exercise of general jurisdiction over a corporation are the place of incorporation and the principal place of business, and only in an "exceptional case" will general jurisdiction be available elsewhere.  Daimler, 571 U.S. at 137–38 & n.19.  The paradigm forum for an individual is his domicile.  Id. at 137.  Here, OG International, OG Management, and OG Holdings' places of incorporation and principal places of business are not California and Caldwell is domiciled in Texas.  Further, plaintiff

8

1 does not assert general jurisdiction for any defendant. Accordingly, there is no general
2 jurisdiction over defendants.

### b. Specific Jurisdiction

Plaintiff brings four claims against defendant OG International. The first claim is for breach of contract and the remaining claims are derivative of the same facts as the breach of contract claim (i.e., constructive trust, UCL, and conversion). Similarly, plaintiff brings six claims against defendants OG Management, OG Holdings, and Caldwell. The first claim is for breach of contract and the remaining claims generally depend on that claim.

With regard to the first prong, the "purposeful availment" standard and the "purposeful direction" standard are two distinct concepts. For claims sounding in contract, courts apply the "purposeful availment" analysis, asking whether the defendant has "purposefully avail[ed]" itself of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (quoting Hanson, 357 U.S. at 253); see Picot, 780 F.3d at 1212. Because plaintiff's claims arise out of its contractual relationship with defendants, the court applies a purposeful availment analysis. See Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990) (applying purposeful availment because, "[a]lthough some of [the plaintiff's] claims sound in tort, all arise out of [his] contractual relationship with the defendants").

While the facts of the case are common to all parties, the court analyzes OG International's specific jurisdiction separately from OG Management, OG Holdings, and Caldwell's specific jurisdiction.

### i. Whether OG International Purposefully Availed Itself of Privilege of Doing Business in California

Defendant OG International contends that its only contact with California was the one-time payment it made to AboveGEM, but avers that it was not a party to the settlement agreement. Mtn. at 9. Plaintiff argues that defendant maintained a

9

1   continuous business relationship with AboveGEM such that it is subject to specific
2   jurisdiction. Opp. at 10.

3   A prima facie showing of purposeful availment "typically consists of evidence of
4   the defendant's actions in the forum, such as executing or performing a contract there.
5   By taking such actions, a defendant 'purposefully avails itself of the privilege of
6   conducting activities within the forum State, thus invoking the benefits and protections of
7   its laws.'" Schwarzenegger, 374 F.3d at 802 (quoting Hanson, 357 U.S. at 253). When
8   analyzing purposeful availment, the court must "use a highly realistic approach that
9   recognizes that a contract is ordinarily but an intermediate step serving to tip up prior
10  business negotiations with future consequences which themselves are the real object of
11  the business transaction." Burger King, 471 U.S. at 479 (internal quotation marks and
12  citation omitted). "To have purposefully availed itself of the privilege of doing business in
13  the forum, a defendant must have 'performed some type of affirmative conduct which
14  allows or promotes the transaction of business within the forum state.'" Boschetto v.
15  Hansing, 539 F.3d 1011, 1016 (9th Cir. 2008) (quoting Sher, 911 F.2d at 1362). Courts
16  examine the "prior negotiations and contemplated future consequences, along with the
17  terms of the contract and the parties' actual course of dealing" that "determin[e] whether
18  the defendant purposefully established minimum contacts with the forum." Burger King,
19  471 U.S. at 479.

20  Plaintiff relies on Latshaw v. Johnston, 167 F.3d 208 (5th Cir. 1999), for the
21  proposition that a court may exercise specific jurisdiction over a nonresident defendant,
22  where the defendant engaged in a sustained commercial relationship with a forum
23  resident. Plaintiff argues that defendant OG International engaged in a sustained
24  commercial relationship with AboveGEM such that specific jurisdiction is appropriate.
25  Opp. at 10–11. Latshaw involved a breach of an oral partnership agreement. The Fifth
26  Circuit listed several facts relevant to specific jurisdiction including that the defendant
27  "made 26 trips to Texas related to [the parties'] alleged business arrangement, including
28  trips to attend oil field equipment auctions, to inspect equipment for potential purchase,

10

1 and to purchase equipment. Latshaw further asserted in the affidavit that Johnston had
2 made at least 37 calls to Latshaw in Texas related to their alleged business
3 arrangement." Latshaw, 167 F.3d at 210. The court reasoned that those contacts were
4 relevant to evaluating the parties "prior negotiations and contemplated future
5 consequences, along with the terms of the contract and the parties' actual course of
6 dealing." Id. at 211 (quoting Burger King, 471 U.S. at 479). The court held that the
7 plaintiff established a prima facie case for personal jurisdiction because the defendant's
8 contacts were directly related to the parties' alleged business arrangement. Id. at 213.
9 Thus, Latshaw stands for nothing more than traditional purposeful availment analysis,
10 focusing on the defendant's suit-related conduct.

11 Here, defendant OG International's suit-related conduct was minimal, especially
12 related to availing itself of California law. Defendant was not a party to the settlement
13 agreement that gives rise to this case and had no obligation to make payments to
14 plaintiff. Plaintiff contends that Miranda (OG International's general counsel) participated
15 in the settlement agreement negotiations and induced plaintiff to enter into the
16 agreement. Opp. at 7. Assuming plaintiff's statement is true, there are no facts that
17 Miranda was located in California or otherwise connected to California during the
18 negotiation.

19 Relying on Latshaw, plaintiff points to facts involving commercial interactions
20 between AboveGEM and defendants, including OG International, OG Holdings, and OG
21 Management's use of AboveGEM's services pursuant to the SSA. Opp. at 10–11. OG
22 International was the initial party to the underlying SSA, which was eventually assigned to
23 OG Management. Further, plaintiff engaged in several discussions with Bernardo Chua,
24 who was CEO and director of OG International, as well as Director of OG Holdings and
25 OG Management. Finally, OG International made three payments to AboveGEM in the
26 second half of 2018, prior to the settlement agreement. These facts constitute a
27 business relationship with plaintiff and demonstrate purposeful availment, but as will be
28 discussed herein, do not give rise to plaintiff's claims.

The final suit-related conduct involved OG International's one-time payment of $40,000 to plaintiff in connection with money owed by OG International to OG Management. Courts have found that a one-time payment to a plaintiff in the forum state from a defendant outside the forum pursuant to a contract generally does not form a relevant contact with the forum state. Thus, in Boschetto v. Hansing, 539 F.3d 1011, 1017 (9th Cir. 2008), the Ninth Circuit found that "the lone transaction for the sale of one item does not establish that the Defendants purposefully availed themselves of the privilege of doing business in California." Boschetto characterized this as a "one-shot affair." Id. (quoting CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1265 (6th Cir. 1996)). Defendant's one-time payment likewise does not establish purposeful availment. See Azzarello v. Navagility, LLC, No. C-08-2371 MMC, 2008 WL 4614667, at *4 (N.D. Cal. Oct. 16, 2008) ("The contract creating the loan contemplated no further action by either party after the repayment date. Put another way, the instant contract was a 'one-shot affair.'").

In sum, defendant OG International's suit-related conduct did not create sufficient contacts with California to demonstrate that OG International purposefully availed itself of California law.

### ii. Whether Defendants OG Management, OG Holdings, or Caldwell Purposefully Availed Themselves of Privilege of Doing Business in California

With regard to OG Management and OG Holdings, there is significant business conduct prior to November 2018 between AboveGEM and the Hong Kong defendants that demonstrates purposeful availment. Plaintiff and OG Management had an established business relationship whereby plaintiff, located in California, provided ongoing software services to the Hong Kong defendants. During that time, AboveGEM co-founder Oliver Wang communicated on a routine basis with Bernardo Chua and Patrick Miranda. As will be discussed, however, plaintiff's claims do not arise out of these contacts with California.

The business relationship between plaintiff and the Hong Kong defendants deteriorated in 2018 leading to the contract at issue in this case. In September 2018, OG Holdings and OG Management were sold to defendant Caldwell. By November 2018, OG Management's unpaid balance owed to plaintiff was approximately $450,000. Wang Decl. ¶ 29. Plaintiff contends that Miranda was involved in contract negotiations concerning a settlement over the unpaid balance, but it is unclear where the negotiations took place. Id. ¶¶ 30–31. The Hong Kong defendants entered into the settlement agreement with plaintiff and then stopped making payments. Id. ¶ 32. It is the breach of that settlement agreement is the basis of plaintiff's claims in this lawsuit.

The facts surrounding the breach of the settlement agreement do not support purposeful availment. "[T]he establishment of an agreement with a California entity alone is insufficient for the exercise of specific jurisdiction." Am. Ins. Co. v. R&Q Reinsurance Co., No. 16-CV-03044-JST, 2016 WL 5930589, at *3 (N.D. Cal. Oct. 12, 2016); see also Burger King, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). Examining the facts and circumstances surrounding the contract likewise do not support purposeful availment.

### 1. Contract Negotiations

While there is evidence of contract negotiations, there is no evidence that defendants traveled to or created contracts in California during the course of the negotiations. Cf. Latshaw, 167 F.3d at 212 (noting that the defendant "made 26 trips to Texas between 1986 and 1993, including trips to . . . sign the sales agreement on the China Rig deal"). While plaintiff contends that Miranda induced plaintiff to sign the settlement agreement with the Hong Kong defendants, there is no evidence that Miranda was located in or traveled to California during the negotiations. Caldwell avers that he was not located in California during negotiations, nor was anyone else associated with the Hong Kong defendants.

13

### 2. Contemplated Performance

The contemplated performance also does not center on California. Instead, the performance was intended to be payments from Hong Kong defendants to plaintiff, located in California. In this regard, plaintiff itself created the only contacts with California, which is not sufficient to create sufficient connections between defendant and the forum state. Walden, 571 U.S. at 285 ("But the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." (citing Burger King, 471 U.S. at 478)); see also Hirsch v. Blue Cross, Blue Shield of Kansas City, 800 F.2d 1474, 1478 (9th Cir. 1986) ("[T]he purposeful availment analysis turns upon whether the defendant's contacts are attributable to 'actions by the defendant himself,' or conversely to the 'unilateral activity of another party'" (quoting Burger King, 471 U.S. at 475)).

The facts here are similar to Ocean SW, Inc. v. Canam Pet Treats, Inc., No. 14-cv-2059-BAS (KSC), 2015 WL 2180492 (S.D. Cal. May 7, 2015). There, a defendant Canadian company acquired the assets of a second Canadian company that owed debt to two California entities, the plaintiffs. Id. at *1. As part of the purchase, the defendant entered into a promissory note and associated agreements with the plaintiffs to repay the debts owed by the purchased company to the plaintiffs. Id. Subsequently, the defendant repudiated the promissory note and did not repay any principal or interest owed to plaintiffs. Id. at *3. Also notable, the defendant conducted business in California, separate from the promissory note, by marketing and selling pet-treats in California. Id. at *8. The district court found the promissory note (and other agreements) insufficient to establish specific jurisdiction because "[t]he contracts at issue in this case—particularly the promissory note—were 'discrete encounters' without any ongoing obligations in California beyond repaying the debts allegedly owed." Id. at *10. Finally, the district court was not persuaded by defendant's other business in California, as it was not a but for cause of plaintiffs' claims. Id. at *8. The same reasoning applies here: the Hong

14

Kong defendants' payments to plaintiff were intended to be "discrete encounters" with no ongoing performance or business relating to California (other than plaintiff's own presence in the forum state).

### 3. Terms of Contract

The settlement agreement itself only provided for the payment of the Hong Kong defendants' debt to plaintiff in return for plaintiff's releasing their claim for the money owed to it in arrears. No contract terms reference or implicate California. Finally, the Supreme Court has stated that a choice-of-law provision should not be ignored in the purposeful availment analysis. Burger King, 471 U.S. at 482. Yet, the settlement agreement's choice of law provision indicates that Hong Kong, not California provides the applicable law. See Caldwell Decl., Ex. A, at 6.

### 4. Course of Dealing

The only evidence about the parties' course of dealing is that the Hong Kong defendants allegedly stopped making payments on the settlement agreement.

In sum, the contract at issue envisioned no ongoing relationship or consequences in California. OG International, OG Holdings, and Caldwell did not purposefully avail themselves of California law.

### iii. Whether Plaintiff's Claim Arises Out of or Relates to OG International's Forum Related Conduct

The second prong of the specific jurisdiction analysis confirms that the court does not have specific jurisdiction over defendants. The second prong requires the court to determine whether plaintiff's claim "arises out of or relates to" defendants' forum related conduct Burger King, 471 U.S. at 473 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)). The primary claim at issue here is breach of contract and thus the question is, does AboveGEM's breach of contract claim arise out of defendants' forum related activities? The answer is no. OG Holdings and OG Management were parties to the settlement agreement; OG Management as debtor and OG Holdings as guarantor. OG International, as stated before, was not a party to the

15

agreement and had no obligation to pay. The alleged breach occurred when defendants OG Holdings and OG Management refused to pay plaintiff.

As discussed in the preceding analysis, OG International engaged in some forum related conduct. Yet, this conduct is not related to plaintiff's breach of contract claim. See RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1278 (7th Cir.1997) ("[I]n a breach of contract case, it is only the 'dealings between the parties in regard to the disputed contract' that are relevant to the minimum contacts analysis." (quoting Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147, 153 (3d Cir. 1996)). Finally, OG International made one payment to AboveGEM, but, as defendant points out, plaintiff's claim arises out of a failure to make payments, rather than fulfilling the settlement agreement's obligations.

In sum, plaintiff's claims do not arise out of or relate to OG International's forum-related conduct.

### iv. Whether Plaintiff's Claims Arise out of or Relate to OG Management, OG Holdings, or Caldwell's Forum-Related Conduct

Plaintiff's claim is for breach of contract of the settlement agreement, not the underlying SSA or the business relationship associated with the SSA. With that frame of reference in mind, it is not appropriate to consider the ongoing business relationship that led up to but does not serve as the basis for plaintiff's claims. This is similar to Ocean SW, where the court disregarded the defendant's business activities in the forum state that were unrelated to the claims at issue in that case. 2015 WL 2180492, at *8 ("[Plaintiffs] repeatedly mention the marketing and sales of [the defendant's] pet-treat products in California and other incidental agreements as considerations that contribute to the specific-jurisdiction analysis. However, the causes of action in this case do not derive from or connect with the marketing and sales of [the defendant's] pet-treat products or the other incidental agreements."). The same reasoning applies here; the Hong Kong defendants' contacts with California unrelated to the breach of the settlement

1	agreement are not relevant for specific jurisdiction purposes.

2	As alleged, plaintiff's claim arises out of the Hong Kong defendants and Caldwell's decision to discontinue payments required by the settlement agreement. However, plaintiff has not demonstrated that defendants' forum-related activities are related to the claim asserted.

Because plaintiff does not carry its burden with respect to any defendant, the court need not consider the third element of the specific jurisdiction analysis.

### c. Alter Ego Theory of Personal Jurisdiction

Plaintiff asserts that the court can impute OG Management and OG Holdings' contacts to OG International under the single-enterprise theory of alter ego liability. Plaintiff also asserts a theory of alter ego liability as to defendant Caldwell, i.e., that the court can pierce the corporate veil as to Caldwell. Opp. at 12.

Plaintiff seeks to impute the contacts of the Hong Kong defendants to both OG International and Caldwell to establish personal jurisdiction. Imputing contacts is permissible if plaintiff can establish alter ego liability. See, e.g., Ranza v. Nike, Inc., 793 F.3d 1059, 1070 (9th Cir. 2015) ("The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction. . . . However, in certain limited circumstances, the veil separating affiliated entities may be pierced to impute liability from one entity to the other.") (citing Doe v. Unocal Corp., 248 F.3d 915, 925–26 (9th Cir. 2001) (per curiam), abrogated on other grounds by Daimler, 571 U.S. 117). The fundamental flaw with plaintiff's theory is that, even if the court were to find alter ego liability, neither OG Management nor OG Holdings have any contacts with California that the court could then impute to either OG International or Caldwell.

### CONCLUSION

For the foregoing reasons, the court finds that it lacks personal jurisdiction over OG International, OG Management, OG Holdings, and Caldwell. Accordingly, the court GRANTS defendants' motions to dismiss and plaintiff's claims against defendant Organo

Gold International, Inc., Organo Gold Management, Ltd., Organo Gold Holdings, Ltd., and Paul Caldwell are DISMISSED WITHOUT PREJUDICE. See Grigsby v. CMI Corp., 765 F.2d 1369, 1372 n.5 (9th Cir. 1985) (holding that district courts without personal jurisdiction should dismiss claims without prejudice). Plaintiff may refile in another jurisdiction that may properly exercise personal jurisdiction over defendants.

**IT IS SO ORDERED.**

Dated: March 31, 2020

/s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge